# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. CR-15-00154-HE |
| | ) | |
| MANUEL RICARDO CAMPUZANO-CHAVEZ, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## **ORDER**

Defendant Javier Alfredo Herrera-Hernandez is charged along with seven others in a five count indictment. Two of those counts are directed to this defendant. They charge him with possession of methamphetamine with intent to distribute and with conspiracy to do so. He has moved to suppress all communications and evidence obtained from four court-authorized wiretaps.[1]

The wiretaps were authorized by orders issued by the Presiding Judge of the Oklahoma Court of Criminal Appeals. The affidavits submitted in connection with the requests for authorization indicate they arose out of a joint federal-state investigation of what the authorities believed to be a drug trafficking organization smuggling controlled substances from Mexico into Oklahoma and other states. Orders authorizing wiretaps on three phone numbers were issued on March 10, 2015. Authorization as to a fourth number was obtained by an order issued June 15, 2015. Defendant challenges the wiretap orders, and seeks

---

[1] *Defendant's arguments are substantially the same as to each of the four applications and orders. The supporting affidavits were also substantially the same. The court's discussion in this order applies equally to all four.*

suppression of the evidence obtained from them, on the basis that the affidavits submitted in support of the requests failed to meet the standards of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2518(1)(c).[2]

Title III governs the use of wiretaps and evidence obtained from their use. United States v. Radcliff, 331 F.3d 1153, 1160 (10th Cir. 2003). An order authorizing wiretap use is presumed valid, and the defendant bears the burden of proving its invalidity. *Id.*

In this case, defendant claims the affidavits supporting the applications for wiretap authorization failed to show that traditional investigative procedures were tried and unsuccessful or why they reasonably appeared to be unlikely to succeed if tried or were too dangerous. *See* 18 U.S.C. § 2518(1)(c). This statutory requirement, also called the necessity requirement, ensures that "the relatively intrusive device of wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." United States v. Killingsworth, 117 F.3d 1159, 1162–63 (10th Cir. 1997) (internal citations and quotation marks omitted).

Traditional investigative techniques include use of confidential informants or undercover agents, standard surveillance, search warrants, pen registers, caller identification devices, and interrogation of witnesses or participants (through grand jury proceedings if necessary). United States v. Foy, 641 F.3d 455, 464 (10th Cir. 2011) (internal citation

---

[2]*In a federal prosecution involving a wiretap authorized by a state court, the authorization must comply both the federal wiretap statute and any applicable state law. See United States v. McNulty, 729 F.2d 1243, 1264 (10th Cir. 1983). Here, defendant challenges only compliance with the federal statute.*

2

omitted). Investigating officers do not need to exhaust every technique available to them before applying for wiretap authorization, but they must explain why the wiretap is necessary with some specificity, tied to the facts of the investigation rather than using generalized boilerplate language. *Id.* In the context of determining whether the necessity requirement has been satisfied, the Tenth Circuit has concluded in numerous cases that the law enforcement goal of uncovering the size and scope, or of uncovering the identity of its members or suppliers, may justify the use of a wiretap. *Id.* at 464–65.

Defendant claims the affidavits supporting the applications for wiretap authorization failed to make the necessary showing of necessity because some traditional investigative techniques had proven to be sufficient to gather evidence of criminal activity. Other techniques, defendant argues, were not attempted at all and should have been.

The affidavits contain sufficient detail to support the authorizing judge's conclusion that the wiretaps were necessary. The affidavits state that the effectiveness of physical surveillance was limited because many of the pertinent transactions or activities occurred at a remote location which was away from a main road and surrounded by locked gates and fences. They indicate traffic in the area was minimal, heightening the chance that law enforcement personnel might be seen and identified. In addition, they indicate the subjects of the investigation routinely used counter-surveillance measures, such as sporadic changes in the location of transactions or by moving in their vehicles along irregular routes to allow them to determine whether they were being followed. The affidavits indicate some surveillance as to the more accessible areas of the involved property was utilized, but that it

3

was of limited usefulness in determining what activities were being conducted and by whom. The information in the affidavits was sufficient to establish that greater use of physical surveillance would not have been sufficiently useful or would have posed too great a risk of detection or danger to the investigators.

The affidavits also described the use of two confidential informants who were able to gain some information about the organization and its activities, and defendant argues more use should have been made of confidential informants. However, the affidavits substantiated that the usefulness of confidential informants as an investigative technique was significantly limited by the organization members' reluctance to trust outsiders. They indicate the more productive of the two informants, who had known one of the participants for more than five years and who was presumably more trusted as a result, nonetheless did not know that participant's last name. The affidavits further indicate that the informants supplied some information, through controlled buys or otherwise, but were unable to identify all the participants in the organization or the extent and scope of its activities. The affidavits amply support the conclusion that greater use of confidential informants would not have met the needs of the investigation.

The affidavits also addressed the use of pen registers and trap and trace devices. While these devices reveal the frequency of telephone contacts with different numbers, they do not reveal the substance of the phone conversations. They are therefore of limited usefulness in determining the nature and scope of any conspiracy or in determining the role played by the various members of it. Further, the subscriber information related to particular

telephone numbers was not always available or reliable—the affidavits indicate that some telephone numbers were listed under nonexistent locations or under the names of other associates in the organization.

The affidavits discussed the potential use of testimonial cooperation or grand jury subpoenas and explained why those techniques are unlikely to be useful in circumstances like those involved here. They noted that in a distribution organization of the apparent size involved here, that witnesses would be unlikely to know (and probably unwilling to disclose) the identities of all the members in the conspiracy. More importantly, the likelihood of getting the necessary information by these means was substantially outweighed by the likelihood that potential witnesses would warn the other members of the conspiracy or otherwise compromise the investigation. Defendant argues that the investigators could not predict the likelihood of success without trying, but the application does not need to show that investigators tried. It is sufficient if the affidavit can show why an investigative technique would be unlikely to succeed. The affidavits here sufficiently detailed the characteristics of the organization, and the circumstances generally, which support a conclusion that interrogation of, or subpoenas to, witnesses being investigated would be unlikely to succeed.

Finally, the affidavits addressed the usefulness of search warrants, suggesting that evidence obtained through such warrants may aid the investigation, but would likely not identify all of the conspirators or the location of the drug suppliers. Further, depending on the timing of any searches, they have the same limitations as the use of subpoenas or

cooperating witnesses—they are more likely to warn the organization's members and frustrate the investigation's goals than they are to produce useful information.

In short, the information in the affidavits amply supported the conclusion that traditional investigative techniques would be insufficient, by themselves, to expose the criminal activity involved and its nature and scope. The showing of "necessity" required by Title III was made.

Defendant's motions to suppress [Docs. No. 73, 74, 75 and 76] are therefore **DENIED**.

**IT IS SO ORDERED**.

Dated this 28th day of January, 2016.

JOE HEATON
CHIEF U.S. DISTRICT JUDGE